All right, we'll hear argument now in the next case on calendar for argument today which is United States of America versus Abdul Malik Abdul Kareem number 20-10155, 21-10315, and 24-3202. And we'll hear first from Ms. Elm. Yes. Okay. You may proceed. Thank you. May it please the court, Donna Elm, I'd like to reserve seven minutes. Mr. Abdul Kareem didn't have a chance of receiving a fundamentally fair trial. Between multiple varieties of withheld Brady evidence, flames of wars contorted path into the jury room, unadmitted and unreviewed, a tsunami of horrifying other act evidence, very little tied to Mr. Kareem and no limiting instruction, diverting the jury from reviewing the indented letter to nurse, an instruction lowering the center element of conspiracies, and a slew of secret filings to avoid disclosure. Cumulatively, this undermined the fairness and integrity of the trial process which he faced. Counsel, under the SIPA context, only information that is relevant and helpful must be disclosed to the accused. Under the Supreme case of Rovario and the D.C. Circuit Court's foundational cases of Yunus and Mejia, the law seems to be that relevant and helpful is much larger than Brady material, the Brady materiality requirement. Is that the correct standard that we should apply in this case? Or if you agree with that, how then do you deal with Climavicius? I take it you're talking about then the ex parte filings and the law is very clear that the substance of which you are unaware of, correct? The substance of which I'm unaware of. Right. So the only questions you're being asked are the legal standards that we'll have to apply to those because we can't discuss the contents either. And the purpose of me asking you that question is because you will not be involved. And so I want to give you the opportunity to address the standard that we should be applying. The standard is very clear that it's actually broader than even Brady. And that's in the cases that it's broader than Brady. And so in order to meet that, you have to be able to show a very minimal amount of relevance. The Curtin issue that we have. Curtin was not objected to. And of course, there's a problem as to the no objection. However, the court should not allow the government to avoid the 471 issue on Curtin by claiming that there was no objection. There was no objection because there was no notice of that. And that the defense only got 471 on the day it was admitted and did not have an opportunity to review it. And so there was no objection. We have on the day that it was first brought in that there was a representation that it was going to be for limited purposes. And so there was no objection, just a conditional admission. When we got to it the next day being brought in, there was a clarification. 471 was just a subpart, just the beginning couple minutes. So again, there would be no objection. Curtin found that you can't rely on the government's representations. And the government's representation was this is the first few minutes. This is just the subpart. Now, the court did not get an objection. But at the same time, the court had heard already in opening before two witnesses about all the horrifying acts. Certainly in Curtin it's very clear you've got to review it. The court has got to review it. And it didn't. If it had reviewed it, it might find out that it was in fact not the first few minutes but the entire video. As a result, we had... Counsel, why not? I mean, jurors are routinely presented with evidence that is inflammatory in some way. What's your best argument in saying that it wasn't necessary to provide full context to the jury as to some of the counts involved in this case? There's actually a couple of good arguments. The one is the necessity wasn't there. It was very clear from the start that Simpson and Sufi were ISIS adherents. You did not need all of that deluge of evidence to show that. In Curtin, there were 144 stories they wanted to get in. And at the end, this court said the court below should consider whether it even needed five. It starts to be a lessening of the relevance as more and more came in. Now, the other thing about it is that there is extreme prejudice here. It not only was the room full of dead babies and multiple mass executions live action, which the court never would have allowed in if she had seen it, but it closed with a message. And the message is we're coming for you. Do you think it was error for the judge not to have reviewed that? Absolutely, it was error. What's our standard of review? Is this plain error in reviewing the admission of 471 in its entirety? No, it's not a plain error. Why isn't it subject to plain error? Because under Curtin, you are required to review it. It is a procedural. That goes to whether it's an error. I mean, was an objection timely objection made to its admission? No, Your Honor. OK, then it's reviewed for plain error. Except that we have a misdirection, a misrepresentation of what it was. We never got to a point to admit it. We never got to a motion to admit it, at which point there would have been an objection. This wasn't just unreviewed. It was unadmitted. Let's assume for a moment that the district court erred in admitting the video. How would this have substantially affected the outcome of the trial? This would have substantially affected the outcome of trial because the way the government portrayed it. If you look at the opening arguments of the government and how they're talking about, especially expert Coleman, they're talking about how this shows that it's a propaganda. You've got to come join us. You've got to come join the fight. And so they wanted to make the point that Mr. Abdul Karim watched it when, in fact, their expert, our expert, said no. There is no evidence of that. But the fact is that they wanted to show material support, the center, the critical center of material support, that this was Karim wanting to join this fight. And that's why that one became particularly prejudicial as well as ending with the, we're coming for you now, which places a jury no one would have let that in. If you, I mean, you may dispute the point, but if he did watch the video, would that be relevant to his intent and motivation in the alleged conduct with Simpson? It would have minimal relevance. So then it would be a 403 issue at that point. That would certainly come under 404B as state of mind. It then goes to 403. Was it more prejudicial? It was phenomenally prejudicial. Counsel, I just want to be clear on something. I'm not sure I understand. Because of something you said, you said that the video was not admitted. It was shown but not admitted. Is that what you said? That is absolutely correct. Okay. Because Judge Desai asked a question about admitted evidence. But this was just a video that was shown but not admitted. Correct. It was conditionally admitted pending a 403 evaluation. And then the next day they played the little clip of it. But again, did not move for admission. We don't have an admitted piece of evidence. Now, the... When we turn to the Brady... Was the 403 objection ever renewed? No. So, well, you know, if you have an evidentiary objection and the district court conditionally admits it subject to a later determination, can you just sit by while the district court then never revisits the issue? Isn't it defense counsel's job to say, now, here's my 403 objection. This came in conditionally. But now I'm going to assert it. If that isn't made, it's reviewed for plain error, isn't it? I understand Your Honor's question. We have... First, the party who is trying to submit evidence has a responsibility to get those things done. Not the other side. Could they have?  But here's the problem...  The government thought it was not barred by 403 and the district court admitted it conditionally subject to the 403 determination and then the objection's not renewed. But there would be no objection at that point because it was the first few minutes which just talk about the history of it. No, but 471 is the whole tape, isn't it? It was the whole tape. That's what was conditionally admitted subject to 403. That's what was conditionally admitted subject to 403. But the next day she clarifies. The next day there's a mistake. There's a reference to 187 as being the tape which it wasn't. And as being the document, as being the item that had been admitted the day before. But it's clear from the record that it's a mistake because it's a reference to the item the day before and the one the day before is 471. And 471, that second day, is clarified because it's not entirely clear the first day if the 471 they're talking about is the full Flames of War video. When you read that, he might be talking about... I want to make sure I understand your argument. So, are you saying that you didn't renew your 403 the objection because the government had represented that this was just the first two minutes and that was what was conditionally admitted but ultimately what was shown was the full that you never even had noticed about the full video and that is why you did not renew your objection? There was no objection made. No 403 objection made because it was only conditionally admitted. When it came in the next day or four days later when it came in, there was she clarified it's just the first few minutes so there was no objection at that point. But there was a strategic decision or determination by defense counsel not to object because it's understanding based on the representations of the government was that it was just the first two minutes? Yes. But what the transcript says so on the first day it's 471 admitted conditionally subject to 403 then the next day Coleman is on the stand and the government mistakenly refers to the video which is 471 as being 187 and says that 187 in its entirety is already in evidence and stated that it wished to play a portion of it for the jury to hear and then the government said actually the sub part is marked as 471 so the government just got the numbers mixed up Potentially. But the government also represented on the record on the second day that the entire thing was in evidence clearly referring to the ruling the day before so I don't see how you can say that the need to raise and renew the 403 objection is somehow excused by any misrepresentation because even though the government mixes up the numbers it is clearly stating that the entirety of the exhibit is in the record. It stated that but it misstated that and there was no objection Only because the number was wrong If it said 471, 471 had been admitted subject to the 403 that was then never renewed. The fact that the entirety of the video was admitted is that what you're saying that the mistake was or misstatement? The misstatement is that the video the video that is 471 is only the first couple minutes Now 187 being admitted that was very clear that it was just that piece of paper with the URL printed on it The 107, 187 was already admitted and referring to it as flames of war did not change what that was and so when they put in just a little bit later it only means that we are now having to deal with that and again if that's all it is and the defense doesn't object one thing I think Judge Sai brought up is you have to understand exhibits were being disclosed during trial there were 170 that were disclosed during trial and there was no disclosure if you look at 10 ER 2437-40 the disclosures are going in each day and what we have on the first day where 187 comes in 10 ER 2437-40 it outlines how they came in and the day that 187 comes in the government gave new exhibits for that day which were 448-70 the next day they hand delivered starting at 471 starting at 472 471 must have been numbered by then but they did not give it the next day it continues on that scope starting at 478 still 471 is not given 471 must have been brought into evidence the next day which is when she talks about it and conditionally admits it so it's not like we were aware of what 471 was when we are getting these exhibits during trial this is a significant case there are a lot of issues in the case and you've used all of your opening argument on one of the issues and there are a number of other issues in the case we don't have another case on calendar so I'm going to give you some additional time can you address some of the other issues in the case that you want to call out to us happily thank you your honor the ruling on the poll camera the ruling the indicative ruling on the poll camera was error she did find that the poll camera incidentally the poll camera evidence is a little piece of the Brady if you think about it it's only really relevant one day of poll camera compared to all the rest of the Brady now she did find it was favorable to both of the conspiracy counts that we raised and she said it was a very close call as to materiality the way she found materiality when you read that order is that she said would that little tiny bit have changed the outcome first of all just changing the outcome may not be our better standard the better standard is probably would have material affected the fairness of the case but she did that this is error this is error because both Kiles and Bagley say the materiality has to be addressed cumulatively she expressly refused to and rejected consideration of anything but the poll camera you concluded that you needed to get that and sent it back for a new trial on that issue correct?  and then the government dismissed the charges after that yes because she never considered those things we do not have a fair ruling and to be fair she also never ruled on the substance of the Hendricks and Jane evidence when the motion to compel the Hendricks and Jane evidence which was document 8 ER 1933 when that one was raised she didn't rule on the substance she simply said you didn't tie it to the defenses of course the defenses were raised in the other concurrent motion for new trial and this was just asking for extra evidence but she did not consider that then in the subsequent motion to compel she never ruled on the subsequent motion to compel and when during the hearing and just before the evidentiary hearing when they found out about the other very material information which was the surveillance and investigation of Simpson for two months before that and if that little minuscule bit of the poll cam was relevant because it didn't show Kareem there surely two months of surveillance by many agents and an investigation trying to figure out who he hangs out with who is he involved with there was no evidence they actually said his name never came up similarly in Jane and Hendricks' discussions with Simpson Kareem's name never came up so we have she never ruled on that and when we get into my 2023 motion that the court allowed me to go back into the district court on when I moved to compel a number of issues they were moved to compel she again didn't rule I had to ask for a ruling she finally gave it she never discussed materiality she never discussed favorability she simply said she lifted a phrase from the government's pleading and she simply said that there was it was not let's see if I can find it well what she was saying is it had already been disclosed it didn't exist or was not relevant and the relevance I think is pretty well established for most of it some things during that 8 months of litigation did fall out some things were shown to be that however at page 45 of the reply I list the things that still were valid that had been established as the government had this evidence and refused to disclose it let me also talk about nurse as the third participant that evidence we of course don't have more on it's one of the ones that I listed nurse also though there were letters to nurse that were being requested as you know in the jury instructions the letters to nurse that were being requested obviously they would be interested in the indented letter the one from Simpson as argued one of the other things the court might consider is the jury asked for letters to nurse and the letters to nurse might suggest Abu Jihad was already explained as a previous convicted terrorist he was writing letters to Simpson and to nurse now those letters didn't come in she was technically correct on that however the envelopes came in but not the letters but there were notes no there were no other communications between Abu Jihad and the others and nurse no there's no evidence of that but if you think about it if the jury was interested in the letters from Abu Jihad letters from 2010 and 2012 and he's an Al Qaeda guy not an ISIS guy if they were looking at it because they were wondering about nurse was he already radicalized and if that's the case we clearly have serious problems with them precluding the third party defense all the information about nurse and the third party defense I'm well over do your honors have other questions I could address thank you counsel we'll hear now from Mr. Smith thank you your honor and may it please the court the judgment in this case and the following decisions of the district court should be affirmed I'd like to begin with the Flames of War video that counsel spoke about the Flames of War video  the Flames of War video was exhibit 471 immediately before it was admitted a witness testified as to what it was he testified that it was a 55 minute video the entire video almost like two movies in once and testified to some of the content of it it was immediately after that that the government offered to admit it and that the district court ruled that it was admitted was that Mr. Coleman who testified to that I believe it was there was more than one witness on that Mr. Coleman did testify about it can you provide the record site to the testimony that I think you're describing here that came in right before the video it's in our brief do you want me to get it if you have it that would be helpful I think the introduction of 471 came in during the testimony of Agent Whitson yes that's correct the introduction was Agent Whitson who was the FBI agent and then Coleman was on the stand the next day when the mix up occurred my colleague is saying that Whitson is 16 ER 4312 and Coleman is 17 ER 4510 it was a couple pages that we have described in our brief the government did leave open the possibility for a 403 objection but the defense never made an objection the defense in their appellate brief are saying that the whole film went to the jury which is true because 471 was the whole film but at the time that the district court sent the exhibits to the jury the district court made sure that the parties agreed that these were the exhibits that should go to the jury and the defense agreed to that and that's at 21 ER 5542 that I apologize was not in our brief so at no point did the defense object and not only that but they affirmatively waived any objection and I would submit that this is not merely forfeiture but it's a waiver why is it waiver? it looks like the 403 point was reserved and then was never renewed that would be a forfeiture it was reserved by the government but the defense never made the objection and explicitly said no objection at multiple points knowing of the 403 right so waiver as you know is where you relinquish a known right forfeiture is where you don't realize you have a right and you fail to object here the record is very clear that the defense was aware of its rights under 403 it made 403 objections in other contexts and by not making the objection here and not simply not making it but affirmatively saying no objection at multiple points including when the exhibit went to the jury we submit that that is waiver and not merely forfeiture then it gets a little more complicated when the government lawyer is messing up the exhibit numbers and now you're saying failing to renew the objection is somehow a conscious waiver when everyone is confused about the number that's a little strict respectfully I don't think they were failing to renew the objection because they never made a 403 objection to exhibit 471 at no point did they make an objection it was acknowledged when the government moves to admit it subject to a later 403 everyone knows there is a 403 issue the 403 issue has been identified and preserved on the record everyone would recognize and counsel would rely on that as having preserved the issue the problem is that it never gets never gets re-raised this court's ruling in Archdale makes it clear that for an appellant to reserve his objection to the admission of evidence he must both make an objection and receive a ruling from the district court so it's the objector's obligation to make clear his objection and to ask the district court to make a ruling on that what do we do with the fact that the judge didn't review the exhibit? so the judge didn't review the exhibit because there was no objection I would submit, first of all the cases that they cite refer to upon objection by a defendant and I submit that that is really the only reasonable way to interpret and apply Curtin the alternative would be that the district judge would be required to read every book, listen to every video or watch every video, even where the parties agree on the admissibility in this case alone, I count more than a dozen, I believe, CDs that were admitted in this case including lectures by Anwar al-Awlaki I don't think it's reasonable that the district court should have had to listen to all of those CDs if there's a manual found in a defendant's when there's no objection I absolutely agree that where there's an objection the district court needs to fully understand the objection and the material underlying it and that's Curtin but where there's no objection there's no precedent for it and it's simply not reasonable to require the judge to become an expert in the evidence and what about the argument that it was not admitted so there was nothing really to object to they argue that so I guess I wanted to give you an opportunity to address that well I disagree with that, the district court's ruling was 471 is admitted I think that's the exact quote and then again, before it went to the jury the district court gave both sides an opportunity to object to anything and ask for their affirmative concurrence that this was what was supposed to go to the jury and both sides concurred now I'm forgetting your question but I hope I've answered it you have, thank you the Flames of War video is particularly relevant it's an ISIS propaganda video that came out around September of 2014 and there were two experts one a defense expert and one a prosecution expert that testified on this based on Kareem's computer that was found in his apartment and it was shown through evidence that he was the user of this computer this computer was used in October of 2014 to access the Flames of War video the user clicked through at least two warning boxes one about age and one about the type of content in order to get to it it was also accessed from the Git PC account Kareem's business was called Git Her Done spelled G-I-T-R-D-O-N-E and then on April 21st in your view there was a factual basis by which you could infer that he had watched the Flames of War video yes, your honor, there's actually a very strong factual basis for the jury to draw that inference and then on April 21st the evidence showed that he deleted evidence from his computer including attempting to delete the evidence that showed access to Flames of War that could only be restored using forensic techniques so counsel pointed to it being prejudicial because of the message because it's propaganda, it says join us it invites attacks all of these themes were in the testimony itself you don't have to watch the video to know that and they're not prejudicial in an unfair way they're the exact reason why it is relevant because the issue here is Kareem's intent, his connection to ISIS his intent to perform an act that would materially support ISIS can I ask you to switch gears a little bit and address the sufficiency argument as to count five and can you address to me or can you point me to any evidence in the record that was presented that indicated the defendant received actual direction or were in contact with ISIS no, we don't have evidence that Kareem was in contact with ISIS but that's not required for a conspiracy to provide material support or either Simpson or Sophie there is some evidence that Simpson may have been in contact with overseas terrorists but I'm not claiming that he was receiving instructions from ISIS it is not necessary for a 2339B that a person who wants to commit an attack in ISIS's name has to have received individualized instruction ISIS has made it clear do you read the statute as reaching a copycat freelancer so if someone who is just sympathetic to ISIS and said I'm going to strike a blow for them watches a lot of ISIS stuff doesn't have any contact with ISIS, goes out and does something and does that with some other people who also have no contact with ISIS, is that covered by the statute in your view? it is if they do it in the name of ISIS because ISIS is inviting individuals to do attacks in its name so if somebody does that or even just attempts to do that they are attempting to provide material support to ISIS that's what ISIS wants, it wants attacks done in its name it's not a membership organization with a role of members how is that consistent with humanitarian law project which seems to read the service provision and service 2 in paramateria with the very specific definition of personnel which doesn't cover freelancers so I don't think that HLP reads it necessarily in Paris what HLP says is that independent advocacy is not banned by the statute but how they got there was by putting load bearing weight on providing a service to a foreign terrorist organization and they in the analysis where they did that they started with personnel noted that there was a limiting definition and then said service similarly refers to concerted activity not independent advocacy and they get that from the word 2, you don't have concerted activity with ISIS here I disagree to some degree for example, if somebody sends a check for $10,000 to ISIS even though ISIS didn't ask for it that would be providing material support to ISIS and if ISIS doesn't get it, it's attempted material support for ISIS and here, this is what ISIS is asking for they are asking for people to do attacks in their name and this was publicly done in ISIS's name the independent advocacy issue is that you're not doing it to the group or for the group you're doing it for the person he's doing it for himself he's saying what he believes that happens to incidentally benefit the group this is not an incidental benefit to ISIS this is exactly what they want, this is what they're calling for this is what the flames of war calls for so if a terrorist organization asks for freelance activity and you do the freelance activity that's therefore services to the activity if you're doing the thing that they ask you to do in this case Simpson doesn't qualify as personnel under the personnel definition Simpson? yes I don't know that I would agree with that I think by making himself a terrorist in ISIS's service he is providing himself as personnel but I don't know that you necessarily need to go that far you could just go with the services should I move on to a different topic? I want to pause at that point about personnel because what it says is no person may be prosecuted under the section in connection with the term personnel unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with one or more individuals to work under that terrorist organization's direction or control or to organize, manage, supervise or otherwise direct the operation of the organization individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control so it seems clear under that definition that even if ISIS says we want freelancers to go out and do terrorist acts on our behalf that someone who goes out and then takes them up on that and does it, does not qualify as personnel within that definition. Well I disagree because I think what you're describing is acting at the direction of ISIS I don't think the direction has to be specific to an individual but I also don't think you need to get here because I think the service of committing a terrorist attack in ISIS's name, this is like the core thing that ISIS does as terrorism, or at least a core thing is sufficient here. I also would note this hasn't been raised so to the extent the court is thinking of ruling on it I would be happy to submit additional briefing. I think this would affect a great many cases around the country the idea that you can commit a terrorist attack in ISIS's name but if you didn't talk to ISIS ahead of time that you're innocent would be I think a very novel ruling your honor. Well how does that square then with the way that HLP was dealing with it because in that case it's squarely looking at what the definition of personnel is and in service of it. Well in HLP it's saying you have to be providing either in conjunction with or to and so it doesn't so I feel like I'm repeating myself and I apologize but when ISIS asks for people to commit terrorist attacks in their name and somebody takes them up on that and does that, that is providing a service to ISIS. That is different than independent advocacy which is providing a service basically to yourself saying the thing that you want to say. Now you might have an independent terrorist attack where you say well I'm not ISIS but I like what ISIS does and I'm going to do something different but I'm going to do a similar thing but I'm going to do it in my own name then maybe that's independent terrorism but here this is how ISIS operates basically. They recruit people through social media and through other means they aren't in a position where they're necessarily able to talk to everybody here they're recruiting people for attacks like this and that was the theory that I think was never challenged in this case as to Count 5. But you would understand that the freelancer who responds to the request to perform terrorist acts in ISIS's name is thereby under the direction of ISIS. Well I would argue that but I don't think it's necessary. I think it's enough to say that the person is providing or attempting to provide a service to ISIS. I think that's probably the easier way to do it. Council mentioned the poll camera evidence. The district court analyzed the poll camera with some specificity and explained how the poll camera which is basically one day of evidence that occurred about a month after Karim told Stefan Verdugo, his longtime close friend that he was not going to personally participate in the attack that that did not undermine all of the direct evidence of Karim's participation in the conspiracy and that includes at least five recipient witnesses who testified that Karim discussed attacks with Simpson including the Garland context, provided money to both Simpson and Sufi to buy expensive firearms, gave an additional gun to Simpson, acquired ammunition together with Simpson, taught Simpson and Sufi how to dismantle, clean and lubricate their weapons to prevent jamming and doing so was like a mentor that's direct quote from eyewitness testimony. He took them shooting on multiple occasions. Three different witnesses at least testified to that. Karim told Stefan Verdugo that he was part of ISIS and after the attack he demanded that Sergio Martinez, he came to Sergio Martinez as another longtime friend in the middle of the night and demanded that he not tell people that they had gone shooting. That testimony by Martinez is corroborated both by his wife and by the FBI which was tailing Karim, which was monitoring Karim at that time and they noticed that he went to Martinez's house at midnight on May 14th of 2015. That's how they found Martinez to begin with. So the poll camera doesn't undermine any of that evidence and it does corroborate the testimony of Ali Sufi who testified that he went to, who testified at trial before the poll camera footage was known that he went to the apartment on May 1st in order to get his exercise equipment. He testified that he had moved out all his other material out weeks earlier but he couldn't move the exercise equipment without renting a van and he did that on May 1st. He testified that his brother insisted that he come on that day and the poll camera in fact shows him moving, shows him there for about 34 minutes moving exercise equipment out of the apartment. Defense counsel said that the district court didn't rule on the Hendricks-Jane discovery matter but that's not true. The district court said in denying the second motion for a new trial said that it was merely speculative and that there was no basis for further discovery. That's also the ruling in 2024 which we submit is not before this court but I will say the court found not that the evidence wasn't material but that there was no additional evidence to be produced. That everything that the defense was arguing was based on speculation and that there was no basis for believing that the U.S. attorney's office was derelict in any way in their discovery obligations. Hold on, counsel. With going then based on that statement in your previous argument, the case ultimately was remanded as to count two for a new trial, correct? Yes. And why was that? I do want to clarify because I understand why I caused confusion. The district court's ruling in 2024 was that as of this point there is no reason to believe that the U.S. attorney's office has not. But the district court didn't know about the Poll Camera. The Poll Camera came out because the U.S. attorney's office produced it. The U.S. attorney's office did not know about it and the district court held a three-day hearing on this and the district court concluded that it was an oversight by the FBI and essentially what happened was the Poll Camera was part of an earlier investigation of Simpson, which was not about Garland. The FBI affirmatively did not believe that he was likely to go to Garland. And the Poll Camera went up on May 1st by coincidence. The application had been put in on April 9th. And if I could just give a little bit of background. The investigation was opened on March 2nd. There was virtually no surveillance of Simpson during March other than spot checks of the parking lot. In early to mid-April, there's occasional surveillance for maybe a few hours at a time. The only time there was round-the-clock surveillance was April 24th and 25th. That was because the Pat Tillman run was April 25th here in Phoenix and they were concerned that Simpson might see that as a target of opportunity. They were not generally concerned of him traveling to commit terrorism, obviously, hindsight being 20-20. And then after the 25th, there's sporadic surveillance on the 26th and 27th and then no further surveillance. The bottom line was that the Poll Camera information was not provided after the hearing. The court ultimately indicated that it should have been provided and that was a result of sending it back and then ultimately the government decided not to have it. That's correct. I agree it should have been provided. It was an oversight by the FBI. It was a totally new investigation that was done with regard to Garland that didn't target Simpson, obviously, because he was dead. The Simpson investigation wasn't involved with Garland. The Simpson investigation reviewed the Poll Camera footage after the Garland attack, determined that it wasn't of any investigatory value and essentially never told the agent on this investigation, on the Garland investigation. And that's not to be an excuse, it's just an explanation, but the fact is the district court found that it was an oversight, that there was no bad faith and that the U.S. Attorney's Office specifically didn't err at all, although I fully recognize that the government is responsible for the FBI. And yes, so the district court found that... I guess the problem I'm having is that the failure to disclose, you can't just raise your hand and say, oh, I'm sorry, we missed this. This was a critical piece of information that should have been provided to the defense, and it was not. And just to call it an oversight seems... I'm not sure I would characterize it as that. Okay, well, I'm going with the district court's findings, but I understand that you're taking this seriously and you should. We take the Brady obligations very seriously. But there is a three-part test for determining whether something is Brady and requires a new trial. And here the district court applied that test correctly, found that this was arguably material, or maybe perhaps material to count to, and ordered a new trial on that count, and found and explained in some detail why it was not material to the other four counts, and not even relevant to counts three and four. And I think I've already pretty much described that. So if there's no further... bases on that, I just wanted to address one more thing that the defense counsel addressed, which is the issue of severe nurse. Much of what the defense has argued about severe nurse was not timely presented to the district court, and so the district court didn't rule on the marriage. Rather, the district court found that the 2023 motion was out of time because it was more than three years after the verdict. The district court found that equitable tolling was not... Sorry, that there was no excusable neglect, and that's something that is a discretionary determination by the district court. And so the district court didn't rule on that, on the merits, and this court shouldn't either. As for the letters to nurse, there was some discussion of the letters from Abu Jihad. So just to try to be complete, there were three letters from Abu Jihad that were found in the Simpson-Sufi apartment. Two of them were addressed to nurse, and one was addressed to Simpson. And they're in the record. The defense admitted the outside of the envelopes of the two that were addressed to nurse, and I believe also the one that was addressed to Simpson. The government admitted the contents of the letter to Simpson, which basically was Abu Jihad... The letter to Simpson came after the declaration of the ISIS caliphate, and Abu Jihad was basically saying the ISIS caliphate is bogus. Al-Qaeda is the real thing. You shouldn't follow ISIS. The letters to nurse were not admitted. The defense counsel admitted only the envelopes and not the letters. The jury question... Sorry. The jury asked a question, which was, are there a letter from slash to Sabir nurse? So it's rather clear that they were talking about these letters, and as the district court immediately concluded and the counsel for both parties who had attended the trial both concluded that they were talking about these letters, the discussion immediately was that only the envelopes were admitted, the letters were not admitted. The district court correctly said the letters were not admitted, and that's just the answer to the jury. If there are no further questions, Your Honor, we would request that the government... Sorry, we would request that the court affirm the district court. All right. Thank you, counsel. Thank you. All right. We'll hear rebuttal now. May it please the court. Good morning, still. I'm Kathleen Bliss on behalf of Abdul Karim. Your Honors, first I want to go back to Curtin and make a few clarifications on the Curtin issue that we've raised with respect to 471 and 187. And remember, 471 was only conditionally admitted. It wasn't fully admitted through Whitson. And I'd refer the court to 16 ER 4311 through 13. But the condition was 403, and there was never a 403 objection then later raised and renewed. And so it came in then because the objection was never made. Well, you have to look at that in context with what happened later because it was not published through Whitson. There's no doubt about that. It was identified as the full video, Flames of War, through Whitson. He had looked at it. And then when you go to the next day, when you have Sageman describing Flames of War and what it is, it's the 187 was admitted in its entirety. Now, maybe that was a misstatement by the prosecutor, but they should have at least fixed it because then. But it's clear from the context, even though it's called one, it's clear from the context that it means the whole video came in. I don't know that, Your Honor, because she identifies 471 as a. This is why we have contemporaneous objection rules, because if you raise the issues in the district court, they can get sorted out. And at no point was the 403 objection ever asserted. Because there was never a motion to fully admit 471. And I would go back, step back a little bit about 471, Flames of War. There was never any direct evidence whatsoever by any witness, primarily the government's witness, Vaughn, that Kareem ever accessed or watched Flames of War. So we're on shaky grounds anyway with respect to 471. Look at the Vaughn testimony. That's 14 ER 3660 through 61, 14 ER 3694. I thought that there was evidence presented that he had it on his computer. No, Your Honor, there wasn't. With all due respect, I must correct the court's understanding of that. Only a fragment of a URL was on that computer. And that's 187. There was never a video on his device, never. And there was no proof whatsoever that he had ever watched it. And there was an advertisement on Simpsons of Flames of War, but there was no proof that even Simpson watched it. So I would say we're on shaky grounds even talking about Flames of War and assuming under the worst-case scenario for Abdul Kareem, who, remember, is serving 30 years because of a mistake, a misidentification by the government that probably caused his counsel to not then revisit the 403 objection. That goes to an entire collapse of due process. And even if you're going to look at it under plain review, Your Honor, under the fourth prong, you've got to look at the damage to the integrity of the judicial process. Curtin makes very clear a judge is not a moderator. A judge is the governor of the court. A judge has supervisory authority over the court process. And I would submit to you, had Judge Bolton seen that video, Flames of War, she would have never allowed it. The government can say how relevant it is as to ISIS, but lest there be any question whatsoever, Your Honors, ISIS was on trial. And Kareem, with no connection to ISIS whatsoever, go back and look at Vaughn's testimony. There was nothing on his computer with beheadings. There was a pixelated, hard-to-read, perhaps, flag of ISIS. That's the only thing that was found on any of his devices. And so you can go through the entirety of her testimony and understand that there was no connection of Abdul Kareem to ISIS. So the other reason I think it's important to look at the court's decisions, she did try to fuzz out or modify certain exhibits. I identified those from the 171 series, the execution of the pilot, the Jordanian pilot that Mr. Sageman even testifies about as being so extreme that that streaming on Fox News, they were shamed into withdrawing it because it was so horrifying. And yet she allowed four of those photos in. So now we're into harm, not harmless, I'm sorry, we're into abusive discretion. And then you couple that, you connect it with flames of war, something she never reviewed, and frankly, I don't think she would have allowed. The due process collapses in this case. He did not get a fair trial. He didn't even get a notion of a fair trial. Now you fold in the Brady violations. The court said in her ruling, the indicative ruling, the docket number is 640, that it was a shaky case. So we're not dealing with a case where there's overwhelming evidence. We're dealing with a shaky case. She said that desert stuff was vague. She said those juveniles couldn't even tether their testimony to a timeline. She had specific findings that it was a shaky case. There were jury questions about it. No, flames of war put it over the top. And even if you look at it under plain error, you can't say that it was a fair trial. Can you address counsel's point when we were, you heard the colloquy we had concerning what the standards are for count five, and raised some legal questions about how humanitarian law projects should be construed, and one of counsel's responses was that this was, the particular tenor of the points that were being raised were not ones that had been raised in your opening brief. Is he correct that you did not raise those points? I would disagree with that representation, but I would focus more on under... Because I understood, you know, that prompted me to go back and look at the relevant section of your brief, and what it does is it says that what the government needed to prove was that he had the specific intent to advance the conspiracy's object, knowing and intending to advance ISIS's goals, and that he intended to support ISIS in doing so, and that Simpson and Sufi, there wasn't adequate evidence that Simpson and Sufi entered into an agreement to support ISIS. But it seems to me that none of that suggests that Simpson and Sufi had to be under ISIS's direction and control in order to fit within count five. So it doesn't seem, in fact, you made that argument. But I wanted to give you the opportunity to respond to that. It does seem that that's not in your brief. And perhaps that's so, Your Honor. Okay. I would submit that in the sufficiency argument we were making, and I would cling to this fact, is conspiracy is a specific intent crime. And there had to be proof that Kareem was not merely a bystander. Correct. But what was the object that's required by the statute? What does it mean to provide support to ISIS? And it seemed to me, going back to your brief, that what you were saying is that furthering ISIS's goals in response to its recruiting efforts would count as providing material support to terrorists, but that there wasn't here sufficient proof that there was an agreement to further ISIS's goals. With respect to Kareem, that's right.  That's all I can rely on, is there was not sufficient evidence as to him as to count five. Perhaps with Simpson, but not with Abdul Kareem. There just wasn't the evidence for that. Let's see. On the Brady, again, I emphasize that this court has to look at it cumulative. And so counsel brought up the equitable tolling issue. No, we're talking about Brady. Equitable tolling doesn't apply to Brady. And so all of the evidence that was developed after the trial, including the discussions between the undercover and Simpson, that was critical evidence, because it put the FBI in the mix. It put them in Garland. They knew about it, they were there. And then you go into the surveillance that happened months before the Tillman run, things like that, of Simpson. That was critical evidence that Kareem could have shown that there was nothing about him whatsoever. You go into the phone records of Nurse, that the court said, no, Defense had Kareem's phone records. No, Defense needed Nurse's phone records, because that would have shown all of the interactions between Simpson and Nurse. And then with respect to the insurance, the money, that's what counsel for the government argued in their closing, is about this insurance scam that Kareem supposedly had. Well, Nurse was. He owed $33,000. That's how much he raised in restitution from his insurance scam. And the government can't just say, oh, it was a state case, because FBI agents were on the witness list in that case. So when you look at all of it, cumulated, and you, this court, you apply de novo review, then you have to ask yourself, does this call into question that jury's verdict? Would this have been helpful to Kareem? Could this have changed the outcome? It doesn't mean that Defense has to show he would have been acquitted. But I would submit in a case this week, relying on evidence that should have never been allowed in the first place. Flames of war. Your Honor, I hate to ask you to look at that exhibit, 471, but when you do, you'll know there's no way Judge Bolton would have allowed that in. And it's disingenuous for the government to say that Kareem waived an objection. All right. Thank you, counsel. I'd like to thank counsel on both sides for the very helpful arguments in this case. As we indicated in the previous order that we issued on Friday, we will have a, with respect to the ex parte issues, we'll have a further ex parte session with government counsel. Yes. No, you cannot participate in it. No, no. After that session, I'm not going to submit the case at this time. But after that session is concluded, the case will then be submitted to us for decision. You can be excused. Yes. Thank you. Thank you, counsel.
judges: COLLINS, MENDOZA, DESAI